Fisk et al. vs. National Bank et als.

## No. 9984.

### F. M. FISK ET AL. VS. GERMANIA NATIONAL BANK ET ALS.

This case hinges mainly on questions of fact.

It was sought to hold the defendant bank liable for the contents of a bank-box for wrong-fully delivering the box, and to recover from Ringrose and Washburn the contents of said box, amounting to $100,000, which they are charged with having appropriated.

*Held:* the bank. having delivered the box to the bearer of the ticket or card which called for the delivery of the box to "Bearer," had legally complied with the contract, and was. therefore exonerated from all responsibility in the premises.

*Held :* as to Ringrose and Washburn, the evidence having entirely failed to show that the box in suit contained any money or values, as alleged by plaintiffs, or to connect either of these two defendants with any spoliation of that or any other box belonging to the succession of Fisk, no recovery could be had as against them.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Gus. A. Breaux, Posey & Ker* and *W. R. Richardson* for Plaintiffs and Appellants.

*Braughn, Buck, Dinkelspiel & Hart, H. E. Upton* and *A. J. Murphy* for Defendants and Appellees.

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiffs in this case are the widow and the son of F° M. Fisk, who died in this city in December, 1874.

They instituted this suit in December, 1884, for the recovery of the contents of a bank-box, which, they alleged, had been deposited by the deceased in the Germania Bank, whence it was taken out by two of the defendants, Anne Conery and W. B. Ringrose, and rifled of its contents, which were appropriated by Ringrose and the other co-defendant, W. W. Washburn.

They alleged that the contents of said box consisted of money and of securities worth in the aggregate one hundred thousand dollars, for which they asked judgment against the four defendants *in solido.*

They appeal from a judgment which rejected their demand.

The defendants interposed numerous pleas in defense, which may be summarized into a general denial and the plea of prescription of one and ten years.

Plaintiffs' theory of their case is substantially as follows:  The deceased, Fisk, who was a thrifty and wealthy man, was divorced from his wife, who obtained in the same proceedings a judgment against him for her share of the community property, which amounted in 1871 to more than $150,000, consisting mainly of immovable property.

To avert the seizure of any of that property by his wife, Fisk proceeded to remove it beyond her reach through various devices, one of which was to convert most of it into cash and negotiable securities. He kept but a small bank account, and enclosed the bulk of his money and valuables in a bank-box, which was deposited in the defendant bank, and which was marked in the name of Anne Conery, one of the defendants herein, with whom he lived in open concubinage, occupying the same house, for nearly twenty years. As the greater part of his moneyed transactions were carried on in the name of "Anne Conery," he held her general and special power of attorney, under which he dealt with all matters, property, money and values which stood in her name, and by virtue of which, together with the deposit ticket or card, he called for and took out of the bank as often as he desired the box therein deposited in her name, and as her property.

It is then contended that, at the time of his death, the box contained some $70,000 in currency, $35,000 in bonds and other negotiable securities, besides jewelry and other small effects of value; and that with the ticket of deposit which Anne Conery abstracted from the person of Fisk, as he lay unconscious at the approach of death, on the day before his demise, the box was taken out of the bank by Ringrose, who stole the money which it contained; the bonds being appropriated by Washburn, one of the conspirators, who had been appointed executor of Fisk's estate through an olographic will which had been taken out of the bank-box by Ringrose, and by the latter handed to Anne Conery the universal legatee under the will, which she delivered to Washburn.

Washburn's administration of the estate was soon brought to an end through a subsequent will of the deceased, under the effect of which one of his daughters became executrix, and thereafter administered the succession through Washburn as her instituted agent.

The succession, thus administered, amounted to something over $40,000, of which the widow and heirs were in due course placed in possession. Thus the controversy is restricted to the alleged contents of the bank-box.

It is argued that the difference between the inventoried value of the community in 1871, and the amount of property left by Fisk at his death, was represented by the money and bonds which the bank-box contained at the time of his death; and which were appropriated by Ringrose and Washburn a few days after his death.

As could be naturally expected in a trial which took place some twelve years after the occurrence of the alleged events and incidents which form the basis of the suit, the evidence, which fills up an im-

mense record, is decidedly conflicting, having imposed on the Court tedious and painful labor to reach a satisfactory analysis thereof.

And we leave the record with the clear conviction that the case is entirely with the defendants.

As it turned out during the trial that the testimony of Anne Conery was the main prop of plaintiffs' case, it follows naturally that they do not press their claim, and that they are not clamorous for a judgment, against her.

Their attack will therefore be considered as being levelled exclusively against the three other defendants.

## I.

Their right of recovery against the bank is predicated on its alleged violation of a contract of deposit. But, according to plaintiffs' own evidence, it appears conclusively that there was no contract of deposit between the bank and Fisk, in his own right. Avowedly, the box which is the subject-matter of this litigation bore the name and was deposited as the property of "Anne Conery, 157 Camp street, N. O.," and the card which evidenced the contract entitled the bearer thereof to call for, and to obtain possession of, the box deposited in the bank in the name of "Anne Conery." And the record shows that Fisk always obtained the box on presentation, and as the bearer, of the card in question, which was always kept by the bank until the box was returned.

Now, it is conceded that the last and final delivery of the box was obtained by the bearer, and on presentation, of that identical card.

Wherein, then, did the bank violate its contract touching that box?

The avowed object of the device or scheme was to hold out Anne Conery as the true owner of the box and contents, so as to screen either from the reach and action of the divorced wife. And if it had happened that in any proceeding by the wife the bank had delivered the box as the property of Fisk, how clamorous would Anne Conery, instigated by him, have been in holding the bank responsible for a violation of its contract by an illegal and wrongful delivery of the box.

Article 2949 of the Civil Code, which plaintiffs invoke as fixing the liability of the bank, reads as follows:

"The depositary must restore the thing deposited only to him who delivered it, or in whose name the deposit was made, or who was pointed out to receive it."

This is precisely what was done by the bank in the premises. The box had been deposited in the name of "Anne Conery," and the party pointed out to receive it was the bearer of the card issued in her name.

As often as Fisk obtained possession of the box, and the record shows that it occurred almost every day for four years, it was in that capacity that he obtained it; the same means which Ringrose used in December, 1874. The fact that between Fisk and Anne Conery the box was truly and exclusively the property of Fisk, and that in point of fact he always held and constantly carried on his person the card which evidenced the contract of deposit, was of no concern to the bank, and cannot alter, vary, modify or increase the responsibility of the bank touching the box, which it was bound to deliver to the bearer on presentation of the card. The bank, therefore, stands entirely exonerated from any liability in the premises. That conclusion is practically conceded by one of the plaintiffs, who says in one part of his testimony: "As far as the bank is concerned, I did not think there was any conspiracy. I don't see why there should be."

## II.

The theory as to the liability of the defendant Washburn is predicated on three circumstances:

1st. That the box marked "Anne Conery," and numbered as "33," alleged to contain $100,000 in money and values, was found in his possession some ten years later, when it was returned and delivered by him to one of the plaintiffs herein.

2d. That a short time after the death of Fisk, he converted city gold bonds, of the kind alleged to be in the box, amounting to some $35,000, into premium bonds.

3d. That as executor, and as the agent of the executrix, he entirely failed to make any effort, or to institute any search for the recovery of the box, the previous existence and the missing of which had been made known to him at the time.

Before entering into a discussion of these three grounds of suspicion, and which at most amount to nothing else, it is but fair and proper to premise here the declaration of the entire failure of plaintiffs to have shown that Fisk had possession, at the time of his death, of money or securities, contained in the box in question, or anywhere else, in an amount equal to or approximating the sum which plaintiffs claim in this suit.

It would serve no useful purpose, either in justice or in jurisprudence, to analyze, in this opinion, the testimony which bears on this point. It is sufficient to announce our conclusions on the subject, and it is better to omit the publication of our views as to the insufficiency of any part of the testimony, or touching the veracity *vel non* of any of the witnesses in the case.

But conceding, *arguendo*, that there was such a box containing the great values which plaintiffs describe, we find no reason in the record to justify the assertion that Washburn had any knowledge thereof, or any connection therewith.

1st. The evidence shows that'the trunk and tin͏̈boxes which Washburn turned over to F. M. Fisk, Jr., in 1884, had been brought to his place of business some ten years before, when he represented the executrix, and that neither of them contained the values in question. And on the point that "Box 33," described by some of the witnesses as containing Fisk's treasures, was handled by Washburn, the evidence is not satisfactory that the identical box had ever been in Washburn's possession. Can it be supposed for one moment that he would at any time be so stupid as to turn over to one of the heirs the identical box which he had participated in despoiling ten years before, and for which diligent search had been instituted, including the arrest of Anne Connery—and in the absence of any demand for the same?

Much more natural and much easier and safer would it have been to have destroyed it, or to have made it otherwise disappear forever.

2d. The record shows Washburn to be, and to have been at the time, a man of means, and to have then speculated in city securities, which he first converted into gold bonds and subsequently into premium bonds. There is nothing in the coincidence that he converted his bonds at about the time that the succession of Fisk was in course of settlement.

3d. As executor, or as the agent of the executrix, he was under no obligation to do more than to administer the property which was inventoried in the succession. And it was no part of his duty to institute detective researches for any missing money or paper, unless some tangible clue had been furnished him by the heirs or other interested parties. This is hardly as much as a reasonable ground of suspicion.

### III.

In so far as Ringrose is connected with the alleged appropriation of money, we refer to what was said above as to the absence of legal or satisfactory proof of the existence of the money at all, as the property of Fisk, and this is the essential prerequisite to any recovery against him.

It appears from the record that his only connection with the succession, or with any property belonging thereto, or connected therewith, was as the messenger or friend of Anne Conery, at whose request he called for and withdrew a certain bank-box which had been deposited at the bank in her name; but the evidence entirely fails to show that

the particular box in question contained any money or valuables be-
longing to Fisk or anybody else. The box was claimed as her prop-
erty by Anne Conery, who subsequently pledged its contents, some
silver-ware and other like effects, to secure a loan of money. At her
request he placed the box in the custody of Father Allen, a near neigh-
bor, from whom he brought it back to Anne Conery a few days later.
But, we repeat, the record is barren of evidence showing that the box
contained money or securities such as plaintiffs' claim covers. We
have carefully weighed all the testimony on this point, and we find no
grounds to justify even a suspicion that the defendant Ringrose com-
mitted the crime of larceny, which is practically the substance of the
charge herein made against him.

We therefore conclude, with the district judge, that the defense is
clearly made out.

Under these views we see no necessity to discuss the plea of prescrip-
tion.

Judgment affirmed.